STEPHEN A. HIGGINSON, Circuit Judge,
dissenting:
“It is the uncertainty that charms one. A mist makes things wonderful.” Oscar Wilde, The Picture of Dorian Gray. Perhaps true for Oscar Wilde, but not in the criminal law, where too much uncertainty denies defendants fair notice and permits arbitrary enforcement of the laws. See Kolender v. Lawson, 461 U.S. 352, 357-58, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).
As defined by 18 U.S.C. § 16(b), a “crime of violence” includes any offense that “involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” The question presented here is whether this formulation put Gonzalez-Longoria, a felon, on sufficient notice that his prior Texas felony conviction of Assault Causing Bodily Injury with Prior Conviction of Family Violence, in violation of Tex. Penal Code § 22.01, would trigger[1] an enhanced sentence upon conviction of his latest offense, Illegal Reentry after Deportation, in violation of 8 U.S.C. §§ 1326(a) & (b). The similarities — at least at first glance — between 18 U.S.C. § 16(b)’s definition of a “crime of violence” and the definition of an “aggravated felony” provided by the residual clause of the Armed Career Criminal Act (“ACCA”), 18 U.S.C. § 924(e)(1), which the Supreme Court recently invalidated as unconstitutionally vague, see Johnson v. United States, — U.S.—, 135 S.Ct. 2551, 2557, 192 L.Ed.2d 569 (2015), raise the question whether Section 16(b), too, must be struck as unconstitutionally vague.
ACCA defines “violent felonies” to include, among other things, “burglary, ar *236 son, or extortion, [offenses] involving] use of explosives, or [offenses] otherwise involving] conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii). The italicized portion is known as the “residual clause.” Johnson, 135 S.Ct. at 2556. In Johnson, the Court highlighted “two features” of the residual clause that “conspire” to make the clause unconstitutionally vague. Id. at 2557. First, the Court observed that “the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime” in a “judicially imagined ‘ordinary case.’ ” Id. Second, it “leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony” because of ACCA’s “imprecise ‘serious potential risk’ standard.” Id. at 2558.
The Court’s first concern can be read broadly, as a rejection of the categorical approach whenever it is combined with any degree of risk assessment, or narrowly, as a long-considered ill-ease and eventual repudiation in Johnson of the categorical approach in the specific context of ACCA’s residual clause. The narrower reading is more sound. Even though some mystery inheres in all language, it particularly does when we ask if a prior crime is — not was — violent. Thus, with the categorical approach, we talk a bit like the Sphynx, asking whether a crime is violent, ordinarily (or “archetypically”), but not whether it was violent, factually.[2] All agree this first level of indeterminacy exists in Section 16(b), just as it was identified in Johnson pertaining to the ACCA’s residual clause. In Johnson, however, the Court perceived vagueness rising to a due process violation not because of the categorical approach alone, but because ACCA’s residual clause further mystifies the mystery by requiring courts, in imagining the ordinary case, to further imagine whether the ordinary case would present a “serious potential risk of physical injury.” 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).
Although district courts applying either enhancement must first, similarly, classify a prior offense into a crime category, “judicially imagining” (often counterfactually) the ordinary case, ACCA’s residual clause compounds the vaguery of crime classification with yet another vaguery, asking whether the crime category has the “potential risk” of resulting in “injury.” Merriam-Webster’s Collegiate Dictionary defines “potential” as “[e]xisting in possibility” or “capable of development into actuality.” It defines “risk” as “possibility of loss or injury.” Thus, to talk about “potential risk” is to talk about the possibility of a possibility — the chance of a chance. Adding one more dot to connect, ACCA’s residual clause requires a guess about the potential risk of (necessarily future ) injury, cf. Paroline v. United States, -U.S.-, 134 S.Ct. 1710, 1717, 1721, 188 L.Ed.2d 714 (2014) (“The full extent of this victim’s suffering is hard to grasp.”), rather than about the risk that “physical force ... may be used in the *237 course of committing [an] offense.” 18 U.S.C. § 16(b) (emphasis added).
As the Johnson majority observed, the ACCA’s residual clause’s focus on potential injury requires courts to “imagine how the idealized ordinary case of the crime subsequently plays out.” Johnson, 135 S.Ct. at 2557-58. In contrast, the analysis under 18 U.S.C. § 16(b) is more bounded; it requires courts to apply the well-settled test from Leocal and determine whether the offense category “naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense.” Leocal v. Ashcroft, 543 U.S. 1, 10, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). While enhancement under ACCA requires a guess about the future and potential risk of injury — indeterminate for the myriad reasons described in Johnson — enhancement under Section 16(b) requires a straightforward assessment about the risk of use of force during commission of crimes. Compare Paroline, 134 S.Ct. at 1717-1722 (discussing proximate cause problems inherent in injury inquiry), with United States v. Ramos, 537 F.3d 439, 465 (5th Cir.2008) (assessment about the use of force as applied to victims who resort to self-defense), Wilkins v. Gaddy, 559 U.S. 34, 37-38, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (assessment about the use of force as applied to police officers who resort to force), 18 U.S.C. § 111 (use of force element of offense), and 18 U.S.C. § 1951(a) (use or threat of physical violence element of offense).[3]
The Court’s second concern — uncertainty about how much risk it takes for a crime to qualify — is also less pressing in the context of 18 U.S.C. § 16(b) for another textual reason. As the Court highlighted in Johnson, ACCA’s residual clause “force[d] courts to interpret ‘serious potential risk’ in light of ... four enumerated crimes,” the rhyme or reason of which no one could make out. Johnson, 135 S.Ct. at 2558 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). The Court went on to note that, unlike ACCA, most similar laws did not “link[ ] a phrase such as ‘substantial risk’ to a confusing list of examples.” Id. at 2561. In 18 U.S.C. § 16(b), the amount of risk required — “substantial risk” — is not linked to any examples.
These two statutory distinctions mean that the concerns raised by the Court in Johnson with respect to ACCA’s residual clause are less concerning in the context of 18 U.S.C. § 16(b). Thus, with Leocal as precedent, we should not get ahead of the Supreme Court, invalidating duly enacted and longstanding legislation by implication. See United States v. Nat’l Dairy Products Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) (a “strong presumptive validity ... attaches to an Act of Congress” and, when possible, courts should seek an interpretation that supports the constitutionality of legislation and avoid, when possible, invalidating a statute as vague). This is especially true because the Court in Johnson specifically identified the precedent it was overruling, see Johnson, 135 S.Ct. at 2563, yet intimated nothing negative about its earlier, unanimous Leo-cal decision. See Dimaya v. Lynch, 803 F.3d 1110, 1129 (9th Cir.2015) (Callahan, J., dissenting) (“The Supreme Court will be surprised to learn that its opinion in *238 Johnson rendered § 16(b) unconstitutionally vague, particularly as its opinion did not even mention Leocal and specifically concluded with the statement limiting its potential scope.”).
Gonzalez-Longoria’s most recent crime is Illegal Reentry after Deportation, and his relevant earlier crime was Assault Causing Bodily Injury with Prior Conviction of Family Violence. Due process requires that he be able to apprehend that he could face enhanced punishment because his prior offense naturally involves physical force. That is predictively straightforward and sensible, telling lawbreakers they face longer prison terms because society condemns physical force in criminality more, even as it also commiserates with potential injury and pain and suffering. Section 16(b)’s task, both as to notice (to felons) and in application (by judges), asks whether a perpetrator’s commission of a crime involves a substantial risk of physical force, which is predictively more sound than imputing clairvoyance as to a victim’s potential risk of injury, which the Court, after years of consideration, held to be unknowable in Johnson. Again, the Supreme Court invalidated ACCA’s residual clause only after “[n]ine years’ experience trying to derive meaning from the ... clause,” “repeated attempts and repeated failures to craft a principled and objective standard,” and years of “pervasive disagreement” in the lower courts about how to conduct the categorical approach inquiry with respect to the clause, Johnson, 135 S.Ct. at 2558-60 — a record of unworkability not present here.
In summary, we should not strike Congressional law, 18 U.S.C. § 16(b), because, first, the concerns raised by the Court in Johnson with respect to ACCA’s residual clause are less implicated by Section 16(b); second, because Leocal is precedent only the Supreme Court should adjust; and, third, because Section 16(b) does not involve the interplay of interpretative method and statutory text causing the double indeterminacy that was the due process muddle rejected in Johnson. Gonzalez-Longoria was on sufficient notice that his prior crime of Assault Causing Bodily Injury with Prior Conviction of Family Violence is one society condemns as violent because it involves a substantial risk that, in the course of its commission, force will be used against another. I dissent.

. Section 2L1.2(b)(1)(C) of the United States Sentencing Guidelines provides for an eight-level enhancement to a defendant's base offense level if the defendant was deported following a conviction for an "aggravated felony.” The application note to that provision of the guidelines provides that "aggravated felony” has "the meaning given that term in 8 U.S.C. 1101(a)(43).” U.S.S.G. § 2L1.2, cmt. n.3(A). That statutory provision, in turn, defines aggravated felonies to include, among other things, "crime[s] of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year.” And that definition points us, at last, to the definition provided by 18 U.S.C. § 16(b), which is the one challenged here.

. As the Court summarized in Johnson, "good reasons” supported the adoption of the categorical approach with respect to ACCA:
Taylor [v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990),] explained that the relevant part of the Armed Career Criminal Act "refers to 'a person who ... has three previous convictions’ for — not a person who has committed— three previous violent felonies or drug offenses.” 495 U.S. at 600, 110 S.Ct. 2143. This emphasis on convictions indicates that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.” Ibid. Taylor also pointed out the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction. 135 S.Ct. at 2562.

. Classifying crimes, as well as assessing risk of force and violence, is built into the criminal justice system. For example, 18 U.S.C. § 924(c), which provides for enhanced penalties for the use of a firearm in connection with a crime, contains the same definition of "crime of violence” as 18 U.S.C. § 16(b). See 18 U.S.C. § 924(c)(3)(B). Likewise, the Bail Reform Act contemplates presumptive imprisonment when a defendant is even charged with a "crime of violence.” See 18 U.S.C. § 3142(f)(1)(A), (g)(1).