[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-12077

_____

D.C. Docket No. 5:13-cv-00009-MW-GRJ

QUINCY WILLIAMS,

Plaintiff - Appellee,

versus

NICOLAS RICKMAN,
CHAD HARRELL,
JOHN BARFIELD,

Defendant - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 2, 2019)

Before WILSON and JORDAN, Circuit Judges, and GRAHAM,[*] District Judge.

---

[*] Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

PER CURIAM:

Quincy Williams appeals the district court's grant of summary judgment against him on his claims under 42 U.S.C. § 1983. Following a review of the record, and with the benefit of oral argument, we affirm in part and reverse in part. Because we write for the parties, we assume their familiarity with the record and set out only what is necessary to explain our decision.[1]

1.    Mr. Williams argues that the district court erred by not sua sponte appointing a guardian ad litem (or other representative) for him under Fed. R. Civ. P. 17(c)(2). We disagree. The term "incompetent" in Rule 17(c)(2) generally means a person who lacks the capacity to litigate under the law of his state of domicile, *see Thomas v. Humfield*, 916 F.2d 1032, 1035 (5th Cir. 1990), and here it appears that Mr. Williams—despite his treatment for mental health issues—was able to adequately litigate his claims. The main case Mr. Williams relies on, *Powell v. Symons*, 680 F.3d 301, 308 (3d Cir. 2012), is distinguishable because the plaintiff there "had been adjudicated incompetent in the simultaneous criminal proceeding."

2.    Mr. Williams complains about the loss of certain videos from the correctional institution where the conduct at issue took place. He asserts that the district court should have imposed sanctions on the defendants due to the loss of the videos. Reviewing for abuse of discretion, *see Flury v. Daimler Chrysler Corp.*, 427

---

[1] On issues not specifically addressed, we affirm without further discussion.

F.3d 939, 943 (11th Cir. 2005), we find no reversible error. Significantly, there was no bad faith on the part of the warden, who sent the videos to the inspector general. And, as we explain below, Mr. Williams' statements under oath—without the videos—are sufficient to create an issue of fact as to whether he created a disturbance warranting the use of pepper spray. The videos, though potentially helpful, were not critical to Mr. Williams.

3. Mr. Williams contends that issues of fact preclude the district court's grant of summary judgment. We agree with Mr. Williams on the excessive force claims against Captain Harrell and Officer Rickman.

a. Correctional officers in a prison setting can use pepper spray on an inmate, but there must be a valid penological reason for such a use of force. *See Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008); *Thomas v. Bryant*, 614 F.3d 1288, 1301–11 (11th Cir. 2010). The "core judicial inquiry" for an Eighth Amendment excessive-force claim in a prison setting is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citation omitted). The magistrate judge, in a report that was adopted by the district court, concluded that Captain Harrell was justified in deploying pepper spray against Mr. Williams because (1) he was being disruptive (i.e., shouting profanities from his cell and kicking the cell door), and (2) refused to stop this behavior after Captain Harrell and Officer

Rickman counseled him.  In reaching this conclusion, the magistrate judge and the district court credited the testimony of Captain Harrell and Officer Rickman, and also relied on a use of force report which confirmed their version of events.  *See* D.E. 171 at 4–6, 11–12.

The problem, as we see it, is that Mr. Williams denied creating a disturbance and presented evidence creating an issue of fact as to whether the use of pepper spray was warranted.  In his verified complaint, which serves as the equivalent of an affidavit, *see Baker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981),   Mr. Williams stated that on the day in question (1) both Captain Harrell and Assistant Warden Barfield told him several times that he was going to get "gassed;"  (2) Captain Harrell and an unknown officer came to his cell around 3:00 p.m. and told him to stop causing a disturbance; (3) that he "was not" causing a disturbance; and that (4) at around 3:30 p.m., and without warning, his cell door was opened and he was sprayed with chemical agents twice by Captain Harrell (with the second spraying taking place 15–30 minutes after the first spraying, without any decontamination between the two deployments).  Crediting Mr. Williams' version of events at summary judgment, as we must, Captain Harrell's use of pepper spray was not penologically justified—because Mr. Williams was not misbehaving—and constituted excessive force.  *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir.

2005) ("[W]hen conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version.").

The magistrate judge and the district court reasoned that, in order to survive summary judgment, Mr. Williams had to specifically deny each type of disruptive behavior alleged by Captain Harrell and Officer Rickman. *See* D.E. 171 at 12. We respectfully disagree. At summary judgment, the general denial of *any* misconduct can, if the evidence is viewed in the light most favorable to the speaker, be taken as a denial of *specific* misconduct.

b. Mr. Williams also claimed that, after he was pepper sprayed and taken to the shower for decontamination, Officer Rickman returned him to the same cell, which had been only "half way cleaned." Mr. Williams alleged that the cell walls and toilet were covered in pepper spray residue and that he was forced to sleep on a bare mattress that also had pepper spray residue. These conditions, he alleged, caused burns to his skin and made it difficult for him to breathe. Under *Danley*, we consider these allegations as part of the continuum of Mr. Williams' excessive force claim. *See* 540 F.3d 1298, 1308–10 (11th Cir. 2008) (characterizing the 20-minute placement of a prisoner in a small, unventilated, contaminated cell after the lawful

5

use of pepper spray as an excessive force claim and distinguishing it from "conditions of confinement" claims).[2]

In *Danley*, we held that, even when an initial use of force against a prisoner is constitutionally permissible, continued force is excessive after the prisoner has complied and control has been restored.  *See Danley*, 540 F.3d at 1309 ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need.").  Force includes the confinement of a compliant prisoner in a contaminated cell.  *See id.*  Again, crediting Mr. Williams' version of events, it was excessive to confine him in a contaminated cell overnight on a pepper-spray-contaminated mattress when he was not causing a disturbance (or after he ceased to cause a disturbance).[3]

4.    Mr. Williams asserted that Warden Barfield committed an Eighth Amendment violation by failing to intervene and protect him against the use of excessive force by Captain Harrell and Officer Rickman.  Mr. Williams alleged that

---

[2] Under the Supreme Court's two-part analysis governing Eighth Amendment challenges to the conditions of confinement, courts consider (1) whether the conditions complained of are sufficiently serious, and (2) whether prison officials "acted with a sufficiently culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The standard is deliberate indifference; negligence does not suffice. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991).  In *Danley*, we noted that conditions of confinement claims typically arise from environmental conditions that generally affect the inmate population, 540 F.3d at 1309. *See, e.g., Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) (permitting Eighth Amendment conditions of confinement challenge for high temperatures in prison cells during the summer months).

[3] In the incident report prepared at the time, Captain Harrell and Officer Rickman stated that the use of force occurred in cell Y1107 and that Mr. Williams was subsequently placed in cell Y2127, which was clean and uncontaminated.  Mr. Williams' version of events is different.

Warden Barfield told him that chemical agents would be used on him and later ordered the use of force, but he conceded that he did not see Warden Barfield at his door when the incident occurred.  And in his declaration, Warden Barfield states that he had no independent recollection of the incident, did not tell Mr. Willams he would be sprayed without penological justification, and did not witness any use of pepper spray on Mr. Williams that day.  The undisputed relevant facts indicate that Warden Barfield was not present at Mr. Williams' cell when the use of force occurred.  Because he was not in a position to intervene in the excessive use of force against Mr. Williams, Warden Barfield cannot be held liable for failure to intervene.  *See Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008).

5.  The magistrate judge also concluded, in the report accepted and adopted by the district court, that any injuries to Mr. Williams from the use of excessive force were de minimis.  *See* D.E. 171 at 14.  In reaching this conclusion, the magistrate judge reasoned that Mr. Williams did not exhibit physical injuries from the use of force and did not seek treatment after the incident.  We disagree.

In the months following the incident, Mr. Williams suffered high blood pressure, constant bad headaches, and paranoia, alleging in his complaint that "any time [I] saw a high ranking prison official come into [the] confinement wing[,] I go to thinking that I'm about to be gas[sed] again."  The Supreme Court has told us that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue

an excessive force claim merely because he had the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. High blood pressure and constant headaches are, in any event, not de minimis injuries that foreclose an excessive force claim, though they may ultimately limit the amount of damages that can be recovered. *See id.* at 34, 40. Our circuit precedent is clear, moreover, that psychological injury—even in the absence of physical injury—may be sufficiently serious to satisfy the requirement of objective harm. *See Thomas*, 614 F.3d at 1312. Accordingly, the absence of serious or permanent physical harm alone does not defeat Mr. Williams' claims.

In sum, Mr. Williams has presented sufficient evidence to establish a genuine dispute of material fact as to whether the alleged improper use of pepper spray and the alleged subsequent overnight confinement in a contaminated cell constituted excessive force under the Eighth Amendment. We affirm the grant of summary judgment in favor of Warden Barfield, vacate the district court's order granting summary judgment in favor of Captain Harrell and Officer Rickman, and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART.**